# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

PATRICK JAMES WERNER,

                        Plaintiff,

    v.                                           **Case No. 15-cv-216-pp**

CITY OF GREEN BAY,
CITY OF DePERE,
VILLAGE OF HOWARD,
VILLAGE OF DENMARK,
VILLAGE OF ASHWAUBENON,
VILLAGE OF ALLOUEZ,
VILLAGE OF BELLEVUE,
TOWN OF GLENMORE,
TOWN OF GREEN BAY,
VILLAGE OF HOBART,
TOWN OF HUMBOLDT,
TOWN OF LAWRENCE,
TOWN OF MORRISON,
TOWN OF SCOTT,
VILLAGE OF SUAMICO,
VILLAGE OF PULASKI, and
VILLAGE OF WRIGHTSTOWN,

                        Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* (DKT. NO. 2), GRANTING PLAINTIFF'S MOTION TO WAIVE INITIAL PARTIAL FILING FEE (DKT. NO. 4), DENYING AS MOOT PLAINTIFF'S MOTION TO HAVE DEFENDANTS SERVED THROUGH PACER (DKT. NO. 5), DENYING PLAINTIFF'S MOTION TO PUBLISH ALL DECISIONS (DKT. NO. 6), GRANTING PLAINTIFF'S REQUEST TO SCREEN CASE (DKT. NO. 11), AND SCREENING PLAINTIFF'S COMPLAINT**

---

Patrick James Werner, a Wisconsin state prisoner residing at Oshkosh

Correctional Institution, filed a *pro se* complaint under 42 U.S.C. §1983,

alleging that his civil rights were violated by seventeen municipalities in the

Case 2:15-cv-00216-NJ   Filed 09/21/15   Page 1 of 21   Document 12

Green Bay, Wisconsin area: the City of Green Bay, the City of DePere, the Village of Howard, the Village of Denmark, the Village of Ashwaubenon, the Village of Allouez, the Village of Bellevue, the Town of Glenmore, the Town of Green Bay, the Village of Hobart, the Town of Humboldt, the Town of Lawrence, the Town of Morrison, the Town of Scott, the Village of Suamico, the Village of Pulaski, and the Village of Wrightstown. Dkt. No. 1. This order resolves the plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2), the plaintiff's motion to waive the initial partial filing fee (Dkt. No. 4), the plaintiff's motion to have defendants served through PACER (Dkt. No. 5), the plaintiff's motion to publish all decisions in this matter (Dkt. No. 6), and the plaintiff's request that the court screen his complaint (Dkt. No. 11), as well as screening the complaint.

## I.   PLAINTIFF'S MOTIONS REGARDING THE FILING FEE

The Prison Litigation Reform Act applies to this action because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil case-filing fee, as long as he meets certain conditions. One of those conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id

On March 3, 2015, the court issued an order requiring the plaintiff to pay an initial partial filing fee of $9.46. Dkt. No. 7. Prior to that date, however,

the plaintiff already had filed a motion to waive the initial partial filing fee. Dkt. No. 4. In that motion, the plaintiff details both his earnings and the many deductions that the prison takes from this prison trust account, leaving him without a remainder to pay his initial partial filing fee. "In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." 28 U.S.C. §1915(b)(4). The court will grant the plaintiff's motion to waive the initial partial filing fee, Dkt. No. 4, and will grant the plaintiff's motion for leave to proceed without pre-paying the filing fee, Dkt. No. 2. The court will allow the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

## II.    SCREENING OF THE PLAINTIFF'S COMPLAINT

A.    <u>Standard for Screening Complaints</u>

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint or portion thereof if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous "'when it lacks an arguable basis either in law or in fact.'" <u>Denton v. Hernandez</u>, 504 U.S. 25, 31 (1992) (quoting <u>Neitzke v.</u>

3

<u>Williams</u>, 490 U.S. 319, 325 (1989)). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the factual contentions are clearly "baseless." <u>Neitzke</u>, 490 U.S. at 327. "Malicious," although "sometimes treated as a synonym for 'frivolous,' . . . is more usefully construed as intended to harass." <u>Lindell v. McCallum</u>, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (internal citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555 (citation omitted).

4

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived him of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.    Facts Alleged in the Complaint

In June 1999, the plaintiff was convicted of second degree sexual assault of a child and child enticement. Dkt. No. 1 at 4. As a result of those convictions, he has to register as a sex offender, and pay a DNA surcharge. Id.

In the spring of 2008, the plaintiff completed the prison term imposed for his sexual assault conviction, and sought authority from the Green Bay Sex Offender Residency Board to live with his mother. The Board approved this

5

request. Id. at 4-5. In June of 2009, however, his probation was revoked. Id. at 5. Nonetheless, in November 2009, he asked the Board's permission to live in the Transitional Living Placement Program ("TLP") in Green Bay. This time, the board denied his request, stating, "You were given ample opportunity to reside in Green Bay. So denied." Id. He spoke to his probation officer about this; she told him that "due to the Ordinances and not having approved residence upon release from prison," the Department of Corrections would, upon his release from prison, house him in the Brown County Jail. Id. When the plaintiff was released from prison on March 16, 2010, he was taken to the Brown County Jail, and he stayed there until he moved into a residence on July 1, 2011. Id. He was in the Brown County Jail, then, for over thirteen months.

The plaintiff states that his parole agent advised him to not bother looking for a residence in the Village of Ashwaubenon, the Village of Denmark, the Village of Wrightstown, or the Town of Morrison due to the complexity of their sex offender ordinances. Id. at 6. Indeed, the plaintiff indicates that a lieutenant from the Ashwaubenon Department of Public Safety informed him that he could live in only one location in the village, but that when he contacted that location, he was told that they did not rent to felons. Id.

In April 2010, the plaintiff again asked the Board for permission to live in the TLP; again, the board refused, for the same reason. Id. He began to "search in [the cites of] DePere, Village of Bellevue, Village of Howard and Village of Allouez areas." Id. Eventually, after being denied permission yet another time, the defendant found a residence in the Village of Bellevue, into which he moved

6

in July 2011. Id. In August 2012, the plaintiff tried one last time to get permission to move to the TLP. This time, the Board denied him because "he was a severely high risk to re-offend." Id.

The plaintiff contends that the residence he did find in July 2011, in the Village of Bellevue, was "miles away from public transportation." Id. at 8. He had to walk from two to two-and-a-half miles to bus stops, walks which took some 50 to 75 minutes a day. Id. The job he had at the time required him to work twelve-hour shifts; adding the additional travel time to get to public transportation left him exhausted. Id.

The plaintiff has sued seventeen municipalities in the Green Bay area, challenging as unconstitutional each municipality's sex offender ordinance. The plaintiff alleges that the ordinances apply only to convicted sex offenders required to register under Wis. Stat. §301.45. Id. at 4. The plaintiff argues that these ordinances unconstitutionally regulate where registered sex offenders may live (by forbidding them from living within certain distances of places where children may congregate), how many registered sex offenders may reside at one address, and what procedures registered sex offenders must follow to gain approval for a specific residence. Id. He further contends that sex offenders may be fined for violating these ordinances. Id.

Although the plaintiff mentions numerous legal theories in his thirty-seven-page complaint, it appears that he is challenging these local sex offender ordinances on Eighth Amendment, Ninth Amendment, due process, equal protection, and ex post facto grounds. He also argues that the ordinances

7

violate the Americans with Disabilities Act. The plaintiff seeks declaratory relief, injunctive relief, compensatory damages, punitive damages, costs, and fees.

     C.    <u>Legal Analysis of Alleged Facts</u>

Federal courts are courts of limited jurisdiction. That is, "Article III of the United States Constitution limits the jurisdiction of the federal courts to actual 'Cases' and 'Controversies.'" <u>Goldhamer v. Nagode</u>, 621 F.3d 581, 584 (7th Cir. 2010). A justiciable case or controversy exists only when the plaintiff has standing to assert his claims. <u>Little Arm, Inc. v. Adams</u>, 13 F. Supp. 3d 893, 905 (S.D. Ind. 2014). Constitutional standing has three requirements: (1) a plaintiff who has suffered an "injury in fact"; (2) "a causal connection between the injury and the conduct complained of"; and (3) a likelihood, rather than speculation, "that the injury will be redressed by a favorable decision." <u>Ctr. for Individual Freedom v. Madigan</u>, 697 F.3d 464, 473 (7th Cir. 2012) (quoting <u>Ariz. Christian Sch. Tuition Org. v. Winn</u>, 131 S. Ct. 1436, 1442 (2011)). "An 'injury in fact' is 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." <u>Little Arm, Inc.</u>, 13 F. Supp. 3d at 906 (quoting <u>Ariz. Christian</u>, 131 S. Ct. at 1442). Standing must exist for each form of relief sought. <u>See</u> <u>Goldhamer</u>, 621 F.3d at 585.

When no concrete injury has yet occurred, a plaintiff has standing only if he faces "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement," or if he demonstrates "an intention to

engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder." Madigan, 697 F.3d at 473 & n.5 (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)). Moreover, past alleged constitutional violations are insufficient to establish a present case or controversy "if unaccompanied by any continuing, present adverse effects." Derfus v. City of Chicago, 42 F. Supp. 3d 888, 895 (N.D. Ill. 2014) (quoting O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)).

In his complaint, the plaintiff seeks several different forms of relief. First, the plaintiff requests that each sex offender ordinance be repealed and declared unconstitutional. Dkt No. 1 at 36. Second, the plaintiff requests compensatory and punitive damages from each defendant that had a sex offender ordinance in effect from March 16, 2010, through July 1, 2011 (i.e., during his incarceration at the Brown County Jail following his release from prison), as well as from each defendant that has a sex offender residency board. Id. at 36-37. Third, the plaintiff requests compensatory damages from the City of Green Bay for each time the Board denied his request to live at the Transitional Living Program. Id. at 37 Finally, the plaintiff requests a permanent injunction enjoining each defendant from enforcing its sex offender ordinance. Id.[1]

---

[1] The plaintiff also seeks compensatory damages from the Village of Bellevue, the Village of Howard, and the Village of Suamico for not providing village-wide bus service, Dkt. No. 1 at 36, as well as compensation for any registered sex offender whose residence was either approved or denied by any defendant named in his complaint, id. at 37. The court will deny these requests. The plaintiff has not presented—and the court is unaware of—any authority establishing a constitutional right to bus service throughout an entire

9

A careful review of the plaintiff's complaint demonstrates that he has failed to state a claim for relief that would entitle him to damages against any defendant other than the City of Green Bay. The plaintiff has not alleged that any of the non-Green Bay defendants violated his constitutional rights. The plaintiff acknowledges in his complaint that he has dealt with only the City of Green Bay Sex Offender Residency Board. Id. at 4. The complaint does not contain any allegations of the plaintiff having been denied residency in any of the non-Green Bay municipalities on account of his status as a sex offender, and the plaintiff does not have standing to seek damages from any of the non-Green Bay defendants simply for having a sex offender residency board, or for having a residency ordinance on its books.

The plaintiff's allegations regarding his attempts to reside within any of the non-Green Bay defendants are insufficient to state a claim for damages. He alleges that he started to search for a residence in the City of DePere, the Village of Bellevue,[2] the Village of Howard, and the Village of Allouez, but he had "no sort of luck." Dkt. No. 1 at 5. The plaintiff has not asserted any facts which would support a conclusion that this lack of luck was the result of the sex offender ordinances in place at the time, or whether it was due to any

---

municipality. The plaintiff has not filed a class certification motion pursuant to Fed. R. Civ. P. 23, and this court has not certified a class. The plaintiff does not have standing to seek damages on behalf of individuals who are not parties to this lawsuit.

[2] As discussed above, the plaintiff did, in fact, move into an apartment in Bellevue in July 2011, and apparently resided there until his probation was revoked in May 2012 for rule violations. Dkt. No. 1 at 5. This fact alone demonstrates that he has no cause of action against the Village of Bellevue.

number of other factors—for example, a lack of available and/or affordable housing in those areas, the plaintiff's status as an ex-felon, or the plaintiff's lack of employment.[3] Similarly, the plaintiff alleges that he was forced to search in areas with no public transportation "due to the lack of luck *or* strict Ordinances." Id. at 8 (emphasis added). The plaintiff has provided nothing more than speculation regarding why he was forced to look for residences in locations with no public transportation.

The plaintiff claims that his probation agent dissuaded him from looking for a residence in particular municipalities due to their complex sex offender ordinances. This allegation, even if true, is insufficient to state a claim for damages against the municipalities themselves; the fact that the agent expressed an opinion as to what kind of luck the plaintiff might have in those locations does not result in liability on the part of the municipalities.

The plaintiff's complaint does, however, state a claim for damages against the City of Green Bay. The plaintiff alleges that the Board—acting in accordance with the city's sex offender ordinances—denied his requests to live in Green Bay on four occasions: November 2009, April 2010, April 2011 and August 2012. Id. at 5. He argues that these denials deprived him of his constitutional rights. Specifically, the plaintiff alleges that the city's sex offender ordinances restrict where all sex offenders may reside (that is, without

---

[3] Indeed, the plaintiff states in his complaint that he was denied an apartment in the Village of Ashwaubenon because he was a convicted felon, and that the Board denied his request to live in Green Bay in April 2011 because he did not have a job or any potential employment. Dkt. No. 1 at 5-6.

any individualized assessment), which results in community ostracism and very limited places to live. In essence, his argument boils down to an allegation that the ordinance deprived him of liberty—the liberty to choose where to live—without due process.

The Due Process Clause of the Fourteenth Amendment provides that the government shall not "deprive any person of life, liberty, or property, without due process of law." "Freedom from physical restraint 'has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.'" Kansas v. Hendricks, 521 U.S. 346, 356 (1997) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). If the Green Bay residency ordinance constitutes a deprivation of, or restraint on, liberty—and it is arguable that it does—then the city was required to provide the plaintiff with due process before subjecting him to that deprivation or restriction. The plaintiff alleges that he received no due process; the law was enacted long after his crimes, conviction and sentencing. He alleges that he discovered, when he began to look for somewhere to live years after his conviction and sentencing, that he was subject to the ordinance. Based on these allegations, the court concludes that the complaint states sufficient facts to allow the plaintiff to proceed again the City of Green Bay on a due process claim.

The plaintiff alleges that the city enacted its residency ordinance on April 6, 2007. Dkt. No. 1 at 4. As discussed above, the plaintiff was sentenced as a sex offender on June 23, 1999. Id. Taking the allegations of the complaint as true, the Green Bay residency ordinance did not go into effect until at least

12

eight years after the plaintiff was sentenced. The plaintiff also alleges that the effect of the ordinance is punitive, and that it constitutes punishment. Article I, §10, cl. 1 of the Constitution prohibits states from passing any "ex post facto Law." The Supreme Court has held that the constitutional prohibition on ex post facto laws prohibits the passing of laws that "*change[] the punishment*, and inflict[] a *greater punishment*, than the law annexed to the crime, when committed." <u>Collins v. Youngblood</u>, 497 U.S. 37, 41 (1990) (quoting <u>Calder v. Bull</u>, 3 Dall. 386, 390 (1798)).

> No doubt, the State views lifetime tracking not as punishment, but as a measure intended for the protection of the public. Yet, even enactments that are intended solely for the protection of the public will be found punitive and a violation of rights protected by the Constitution if 'the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil.'

<u>Belleau v. Greene</u>, No. 12-C-1198, 2013 WL 1975672 (E.D. Wis. May 13, 2013) (quoting <u>Smith v. Doe</u>, 538 U.S. 84, 92 (2003)).

The plaintiff argues that the Green Bay ordinance constitutes such a statutory scheme—that restricting where he may live, and exercising sole control over where he may live, is so punitive that the court should deem it punishment, and not a civil protective measure. Like the court in <u>Belleau</u>, this court cannot determine, at this stage, whether the residency restriction is punitive to that degree. There is a reasonable argument to be made, however, that the ordinance does constitute punishment, and that because the plaintiff was subjected to that increased punishment after his conviction and

Case 2:15-cv-00216-NJ   Filed 09/21/15   Page 13 of 21   Document 12

sentencing, he has a claim under the Ex Post Facto Clause. The court will allow him to proceed on that claim.

The plaintiff's allegations are not sufficient, however, to give rise to an Eighth Amendment claim. The Eighth Amendment prohibits the infliction of "cruel and unusual punishment." "The Eighth Amendment governs those charged with the custodial care of convicted persons, . . . ." <u>Sharp v. Kelsey</u>, 918 F. Supp. 1115,1122 (W.D. Mich. 1996). The City of Green Bay was not charged with the custodial care of the plaintiff. Accordingly, the court will not allow him to proceed on an Eighth Amendment claim against the city.

Nor does the complaint state sufficient facts to allow the plaintiff to proceed on an equal protection claim.

> To establish a prima facie case of discrimination under the equal protection clause, [the plaintiff is] required to show that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class.

<u>Brown v. Budz</u>, 398 F.3d 904, 916 (7th Cir. 2005). The plaintiff implies that he is a member of a class—convicted sex offenders who are not committed as violent sex offenders under Wis. Stat. §980.01 <u>et seq.</u> His argument assumes that this class is protected, that he is similarly situated to members of an unprotected class (presumably, a class made up of violent sex offenders committed under Chapter 980), and that the Green Bay residency ordinance treats him differently than the members of the unprotected class for no reason. Uncommitted sex offenders, however, do not constitute a protected class under the Equal Protection Clause. Over the years, the Supreme Court has found that

14

race, national origin, religion, gender and age may place someone in a protected class; it never has determined that uncommitted sex offenders constitute a protected class. The court will not allow the plaintiff to proceed on his equal protection claim.

Nor does the plaintiff allege facts sufficient to support a Ninth Amendment claim. The Ninth Amendment to the Constitution states that "[t]he enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people." The Ninth Amendment does not create substantive constitutional rights.

> Despite [the plaintiff's] claim, the ninth amendment is not a source of substantive constitutional rights. Rather, it was created to preserve those fundamental rights which are implicit, though not enumerated, in the Bill of Rights. Concerned that they may have omitted certain rights, the drafters envisioned that the ninth amendment would serve as a savings clause for rights not specifically mentioned in the first eight amendments.
>
> In the instant case, [the plaintiff] has cited no authority recognizing any kind of unarticulated, fundamental right that is impaired by the city ordinance. Moreover, there are no allegations which identify a specific right that is secured by the ninth amendment. Therefore, [the plaintiff] cannot maintain a claim under the ninth amendment.

Rothner v. City of Chicago, 725 F. Supp. 945, 949-50 (N.D. Ill. 1989) (internal citations omitted).

Similarly, the plaintiff in this case has not cited any authority for any right not already recognized by other constitutional amendments that is impaired by the Green Bay ordinance, or any specific, unarticulated right

15

protected by the Ninth Amendment. The court will not allow the plaintiff to proceed on a Ninth Amendment claim. The complaint also fails to state a claim under the Americans with Disabilities Act. "The ADA prohibits employers from discriminating against disabled employees because of their disability. 42 U.S.C. § 12112(a)." Dickerson v. Bd. of Trs. of Comm. Coll. Dist. No. 522, 657 F.3d 595, 599 (7th Cir. 2011). The plaintiff has not sued an employer, has not alleged a disability, and has not alleged that he was denied employment due to a disability. The court will not allow the plaintiff to proceed on an ADA claim.

Having established that the plaintiff may proceed on his due process and ex post facto claims against the City of Green Bay, the court turns to the question of what kind of relief he may pursue. As mentioned above, the plaintiff asks for declaratory relief (repeal of the challenged ordinances) and injunctive relief (enjoining the defendants from enforcing the ordinances). He also asks for monetary (compensatory) damages, along with costs and fees. Finally, he requests damages for "any and all Registered Sex Offenders" impacted by the ordinances.

With respect to the plaintiff's requests for declaratory and injunctive relief, the court finds that the plaintiff lacks standing to pursue these forms of relief against the City of Green Bay. The plaintiff has not alleged that he continues to suffer adverse effects from the allegedly unconstitutional sex offender ordinances, see Derfus, 42 F. Supp. 3d at 895—indeed, the plaintiff currently is incarcerated, and cannot reside anywhere outside the Oshkosh Correctional Institution. The plaintiff has not demonstrated that the harm that

16

he will suffer such adverse effects in the future is imminent. The court is aware from other cases that the plaintiff has filed that he is not scheduled to be released from custody for several years. Thus, any threat of injury to the plaintiff vis-á-vis the sex offender ordinances "simply is too 'conjectural' and 'hypothetical' to confer standing here." Id. at 896 (citing Johnson v. City of Chicago, Case No. 12-cv-8594, 2013 WL 3811545, at *6 (N.D. Ill. July 22, 2013) and Beley v. City of Chicago, Case No. 12-cv-9714, 2013 WL 3270668, at *3-4 (N.D. Ill. June 27, 2013)).

With respect to the plaintiff's request for damages on behalf of any registered sex offender who has suffered as a result of the Green Bay ordinance, the plaintiff has no standing to make such a request. He has not filed a request that this court certify his case as a class action under Fed. R. Civ. P. 23, and the court has not certified a class. Without such a certification, the plaintiff cannot request relief on behalf of individuals who are not plaintiffs in this suit.

The court will allow the plaintiff to proceed with his requests for monetary damages—compensatory and punitive damages, as well as costs and fees.

### III. PLAINTIFF'S OTHER MOTIONS

The plaintiff has filed three other motions. He asks to have the defendants receive filings through PACER. Dkt. No. 5. Because all of the court's screening orders state that the defendants will receive electronic notice of

documents plaintiffs file with the court, this motion is unnecessary, and the court will deny it as moot.

The plaintiff also asks the court to publish all decisions. Dkt. No. 6. He bases this request on his characterization of this case as a class action (although, again, he has not filed a Rule 23 class certification motion, and this court has not certified a class). He suggests there is a large group of individuals who would be impacted by the court's decision in this case, and argues that published decisions would make it easier to communicate information and to recruit additional plaintiffs.

First, the court does not have final control over which decisions are published and which are not. Publication services, such as Thompson West, search court databases, and often publish cases even when the court has not designated the decision or order as publishable. Second, a court does not base its decision regarding whether to publish on the desires of an individual plaintiff. Every judge decides, for him or herself, whether a particular decision contributes to the jurisprudence in a particular area, such that its publication might be relevant to the public. The court will treat this case no differently. If and when it issues a decision in this case, it will decide whether to publish that decision in the same way that it decides that question in all other cases. The court will deny this motion.

Finally, the plaintiff filed a request that the court screen his (several) cases. Dkt. No. 11. The court grants that request to the extent that it issues this screening order.

## IV.  CONCLUSION

The court **GRANTS** the plaintiff's motion for leave to proceed *in forma pauperis*. Dkt. No. 2. The court also **GRANTS** the plaintiff's motion to waive the initial partial filing fee. Dkt. No. 4. The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $350.00 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10, in accordance with 28 U.S.C. § 1915(b)(2). The Secretary of the Wisconsin Department of Corrections or his designee shall clearly identify the payments by the case name and number assigned to this action.

The court **DENIES AS MOOT** the plaintiff's motion to have defendants receive filings through PACER. Dkt. No. 5. The court also **DENIES** the plaintiff's motion to publish all decisions. Dkt. No. 6.

The court **DISMISSES** the following defendants: the City of DePere, the Village of Howard, the Village of Denmark, the Village of Ashwaubenon, the Village of Allouez, the Village of Bellevue, the Town of Glenmore, the Town of Green Bay, the Village of Hobart, the Town of Humboldt, the Town of Lawrence, the Town of Morrison, the Town of Scott, the Village of Suamico, the Village of Pulaski, and the Village of Wrightstown.

19

The court **ORDERS** that the plaintiff may proceed on his due process and ex post facto claims against the City of Green Bay for monetary damages only.

The court further **ORDERS** the United States Marshal to serve a copy of the complaint and this order upon the defendant pursuant to Federal Rule of Civil Procedure 4. The court advises the plaintiff that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

The court **ORDERS** that the defendant served with the complaint shall file a responsive pleading to the complaint.

The court **ORDERS** that the plaintiff shall submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter. As each filing will be electronically scanned and entered on the docket upon receipt by the Clerk,

20

the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff should also retain a personal copy of each document filed with the court.

The court further advises the plaintiff that if he does not timely file documents, the court may dismiss his case for failure to prosecute.

In addition, the parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

The court will send a copy of this order to the warden of the institution where the inmate is confined.

Dated at Milwaukee this 21st day of September, 2015.

BY THE COURT:

_____

HON. PAMELA PEPPER
United States District Judge

Case 2:15-cv-00216-NJ   Filed 09/21/15   Page 21 of 21   Document 12